# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Baxano Surgical, Inc.[1]<br><br>    Debtor. | Chapter 11<br><br>Case No. 14-12545 (CSS) |
| Official Committee of Unsecured Creditors of Baxano Surgical, Inc.<br><br>    Plaintiff,<br>v.<br>Hercules Technology Growth Capital, Inc.<br><br>    Defendant. | Adv. Pro. No. 15-50089 |

## AMENDED COMPLAINT FOR DISALLOWANCE OF CLAIMS PURSUANT TO BANKRUPTCY CODE § 502

Plaintiff, the Official Committee of Unsecured Creditors ("Plaintiff" or the "Committee") of Baxano Surgical, Inc. (the "Debtor"), the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), for and on behalf of the Debtor's estate, by way of this amended complaint (the "Amended Complaint") against defendant Hercules Technology Growth Capital, Inc. ("Defendant" or "Hercules"), as secured lender under the Debtor's prepetition financing facility, hereby alleges as follows:

## NATURE OF THE ACTION

1. This is an adversary proceeding brought pursuant to inter alia Federal Rule of Bankruptcy Procedure 7001 and sections 502 and 506 of title 11 of the United States Code, 11 U.S.C. §§ 101 - 1532 (the "Bankruptcy Code") and other applicable law: (a) seeking disallowance of certain amounts related to Hercules' secured claim under § 502 of the

---

[1] The last four digits of the Debtor's tax identification number are 9022. The address of the Debtor's corporate headquarters is 110 Horizon Drive, Suite 230, Raleigh, North Carolina 27615.

Bankruptcy Code to the extent that such amounts (i) include embedded original issue discount ("OID"), (ii) relate to the Prepayment Charge (defined herein) or (iii) constitute purported late charges for monthly principal payments that were not made postpetition, and (b) seeking such other and further relief on behalf of the unsecured creditors of the Debtor's estate as may be just and proper under the circumstances of this Chapter 11 Case.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this adversary proceeding by virtue of 28 U.S.C. § 1334(b) and pursuant to 28 U.S.C. § 157(a).

3. This adversary proceeding is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A) and (K).

4. In the event that any part of this adversary proceeding is found to be "non-core," Plaintiff consents to the entry of final orders and judgments by this Court, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure.

5. Venue in this District is properly laid pursuant to 28 U.S.C. § 1409.

## THE PARTIES

6. Plaintiff was duly appointed on November 24, 2014 by the Office of the United States Trustee (the "U.S. Trustee") pursuant to Section 1102(a)(1) of the Bankruptcy Code [D.I 80].

7. Plaintiff has standing to prosecute this Amended Complaint by virtue of, among other things, paragraph 23 of the *Final Order (I) Authorizing Debtor to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364, (II) Granting Liens and Superpriority Claims to Postpetition Lender Pursuant to 11 U.S.C. §§ 364 and 507, (III) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363, (IV) Providing Adequate*

*Protection to Prepetition Secured Lender Pursuant to 11 U.S.C. §§ 361, 362, 363, 364, and 507, and (V) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) and Local Bankruptcy Rule 4001-2* (the "Final DIP Order") [D.I. 176].[2]

8. Defendant is the lender under the DIP Facility this Court authorized under the Final DIP Order.  Prior to the commencement of this Chapter 11 Case, Defendant and the Debtor entered into that certain Loan and Security Agreement, dated December 3, 2013 (as amended, restated, supplemented or otherwise modified from time to time, the "Prepetition Loan Agreement").

9. Upon information and belief, Defendant's headquarters is located at 400 Hamilton Avenue, Suite 310, Palo Alto, CA  94301.

## RELEVANT FACTS

10. On November 12, 2014 (the "Petition Date"), the Debtor commenced the Chapter 11 Case by filing a voluntary petition for relief under title 11 of the Bankruptcy Code.  No trustee or examiner has been appointed in this Chapter 11 Case.

11. The Debtor stipulated in the Final DIP Order that the Debtor was indebted to Hercules under the Prepetition Loan Agreement (the "Prepetition Indebtedness") in the aggregate amount of approximately $7,642,032.80 inclusive of accrued interest, fees and other costs, expenses and charges due and payable thereunder.  Final DIP Order, ¶ 6(c). The Debtor further stipulated that the Prepetition Indebtedness shall constitute allowed, fully secured prepetition claims for all purposes in the Chapter 11 Case and any subsequent proceedings under the Bankruptcy Code.  Id. ¶ 6(g).

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Final DIP Order.

12. Paragraph 23 of the Final DIP Order provides that the Committee must assert any objections, claims, or causes of action on behalf of the Debtor's estate relating to the Prepetition Indebtedness or the Hercules Prepetition Liens by January 23, 2015. On January 23, 2015, the Committee filed its *Complaint for Disallowance of Claims Pursuant to Bankruptcy Code § 502*. See D.I. 237 (Case No. 12-12545 (CSS)).

13. Based on the terms of the Prepetition Loan Agreement and applicable principles of bankruptcy law, certain amounts included in the Prepetition Indebtedness, including a Prepayment Charge (as defined in the Prepetition Loan Agreement), an End of Term Charge (as defined in the Prepetition Loan Agreement), and certain amounts related to the warrants (the "Warrants") the Debtor issued to Hercules in connection with the Prepetition Loan Agreement, are not enforceable obligations of the Debtor. In addition, certain purported late charges for monthly principal payments that were not made postpetition should also be disallowed.

**COUNT ONE**
**(Disallowance of claims - 11 U.S.C. § 502)**

14. Plaintiff repeats and realleges the foregoing allegations as if set forth at length herein.

15. Elements of the Prepetition Indebtedness include embedded OID, part of which represents unmatured interest as is therefore not recoverable under Bankruptcy Code § 502(b)(2). The issues related to OID fall into two categories.

16. The first is that when Hercules advanced funds to the Debtor prepetition, it received the Warrants which at issuance had a value of $700,000 according to the Debtor's own SEC filings. Consequently, some of the cash delivered by Hercules to the Debtor represents the purchase price of the warrants.

17. The correct treatment is that the $700,000 in question, which is payable at maturity, is a form of OID. Accordingly, future OID, i.e., that which would have accrued after Hercules' principal is paid off, is unmatured interest.

18. The Hercules loan was scheduled to mature 39 months from December 3, 2013, i.e., March 1, 2017. Amortizing the OID on a straight line basis means that each month, $17,948.71 accrues. Assuming that Hercules' principal is paid off on February 2, 2015, there would be approximately $448,717.75 of the $700,000 in OID that will not yet have been unaccrued and therefore is unmatured interest.

19. The second OID issue involves the proposed payment of what the Prepetition Loan Agreement refers to in section 2.5 as an "End of Term Charge," which is payable on the earliest of (i) the maturity date, (ii) prepayment in full, or (iii) when the secured obligations are due and payable, i.e. upon acceleration. The debt became accelerated by reason of the bankruptcy petition on November 12, 2014. The End of Term Charge, although purporting to be a fee fully earned, as of the closing date, is in substance compensation for the use of borrowed money, i.e., interest.

20. The Committee understands that the proposed End of Term Charge is $262,500. This should be treated as OID and amortized either to the Petition Date or the date of payment, again for these purposes assumed to be February 2, 2015.

21. To the extent that the Prepetition Indebtedness includes amounts that are actually unmatured interest, these amounts must be disallowed.

**WHEREFORE**, Plaintiff requests a determination by the Court:

(a) that pursuant to <u>inter alia</u> 11 U.S.C. § 502, any amount(s) of the Prepetition Indebtedness that relates to claims for unmatured interest owed to Defendant is/are disallowed;

(b) awarding costs of suit and reasonable attorneys' fees; and

(c) awarding such other and further relief as the Court deems equitable and proper.

**COUNT TWO**
**(Disallowance of claims - 11 U.S.C. § 502)**

22. Plaintiff repeats and realleges the foregoing allegations as if set forth at length herein.

23. Plaintiff understands that Defendant seeks a Prepayment Charge (see Prepetition Loan Agreement, § 2.4) in the amount of 2% of the advance being repaid, which would be approximately $140,000. However this is not a voluntary prepayment but rather an involuntary acceleration. Section 10.1 of the Prepetition Loan Agreement states that if Hercules accelerates at its option, it may seek the Prepayment Charge. However, given the wording of the acceleration clause, this does not apply in the context of an *ipso facto* acceleration. The relevant clause states as follows:

> 10.1    General.  Upon and during the continuance of any one or more Events of Default, (i) Lender may, at its option, accelerate and demand payment of all or any part of the Secured Obligations together with a Prepayment Charge and declare them to be immediately due and payable (provided, that upon the occurrence of an Event of Default of the type described in Section 9.6, all of the Secured Obligations shall automatically be accelerated and made due and payable, in each case without any further notice or act) . . . .

Prepetition Loan Agreement, § 10.1.

24. Notably, the parenthetical which includes the cross reference to the *ipso facto* default does not repeat the reference to the Prepayment Charge that does appear in the prior part of the sentence dealing with voluntary acceleration.

**WHEREFORE**, Plaintiff requests a determination by the Court:

(a) that pursuant to inter alia 11 U.S.C. § 502, any amount of the Prepetition Indebtedness that relates to the Prepayment Charge is disallowed;

(b) awarding costs of suit and reasonable attorneys' fees; and

(c) awarding such other and further relief as the Court deems equitable and proper.

**COUNT THREE**
**(Disallowance of claims - 11 U.S.C. § 502)**

25. Plaintiff repeats and realleges the foregoing allegations as if set forth at length herein.

26. Defendant has charged the Debtor certain late charges for monthly principal payments that the Debtor did not make postpetition. Specifically, Defendant charged the Debtor a late charge of $10,935.93 for a missed principal payment on December 1, 2014, and another late charge of $10,930.87 for a missed principal payment on January 1, 2015 (together, the "Late Charges"). The Late Charges total $21,866.80.

27. The Debtor has been incurring interest under the Prepetition Loan Agreement at the applicable default interest rate since the Petition Date. The Late Charges would, in effect, provide Defendant with a double recovery for the same loss. Accordingly, under applicable law, the Late Charges are penalties that are not enforceable obligations of the Debtor.

28. In the alternative, the Committee also submits that the Late Charges are not enforceable obligations of the Debtor because the amounts owed to Defendant under the Prepetition Loan Agreement were automatically accelerated and became due as of the Petition Date. As a result, the Debtor did not owe Defendant monthly payments of principal after the Petition Date. Accordingly, the Late Charges are invalid and not enforceable obligations of the Debtor.

**WHEREFORE**, Plaintiff requests a determination by the Court:

(a) that pursuant to <u>inter alia</u> 11 U.S.C. § 502, any amounts of the Defendant's secured claim in the Chapter 11 Case that constitute the Late Charges is disallowed;

(b) awarding costs of suit and reasonable attorneys' fees; and

(c) awarding such other and further relief as the Court deems equitable and proper.

## <u>RESERVATION OF RIGHTS</u>

29.  This Amended Complaint is not intended, and shall not be construed as, a waiver of the Committee's rights to (i) assert additional causes of action unrelated to the causes of action set forth herein, including, but not limited to, preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims (including further objections to any proofs of claim filed by Defendant in the Chapter 11 Case), counterclaims or causes of action, objections, contests or defenses, or (ii) amend this Amended Complaint to assert different or additional causes of action relating to the causes of action set forth herein to the extent such amendment is appropriate.

*[Remainder of Page Intentionally Left Blank]*

Dated:  February 12, 2015

          Respectfully submitted,

          MORRIS, NICHOLS, ARSHT & TUNNELL LLP

          */s/ Ann C. Cordo*
          Robert J. Dehney (No. 3578)
          Ann C. Cordo (No. 4817)
          1201 North Market Street, Suite 1600
          Wilmington, DE 19801
          Telephone:  (302) 658-9200
          Facsimile: (302) 658-3989

               - and -

          PILLSBURY WINTHROP SHAW PITTMAN LLP
          Leo T. Crowley
          Matthew J. Oliver
          1540 Broadway
          New York, New York  10036
          Telephone:  212-858-1000
          Facsimile:  212-858-1500

          *Counsel for Official Committee of*
          *Unsecured Creditors*